UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

– against –

CALVIN BAILEY,

Defendant.

**OPINION AND ORDER**

12 Cr. 214 (ER)

---

RAMOS, D.J.:

Calvin Bailey has served about 103 months of his sentence of 180 months' imprisonment, which the Court imposed on December 19, 2014. *See* Doc. 529, Sentencing Transcript. He is currently incarcerated at FCI Danbury, a low security prison in Connecticut. Before the Court is his motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), seeking release to home confinement for the remainder of his sentence, which would be followed by four years of supervised release. *See* Doc. 527. The Government opposes the motion. For the reasons set forth below, Bailey's motion is DENIED. The denial is without prejudice to re-submit an application after Bailey is seen by a ▮▮▮▮▮▮ or upon a showing of changed circumstances.

## I. BACKGROUND

### A. Prior Proceedings

On June 20, 2012, a grand jury in the Southern District of New York returned Superseding Indictment S1 S12 Cr. 214 (ER) (the "Indictment"), charging Bailey and nineteen co-defendants with conspiring to distribute more than 280 grams of crack cocaine, and more than 50 kilograms of marijuana from 2001 up to 2012, in violation of 21 U.S.C. § 846. *See* Indictment, Doc. 18. The Indictment further charged Bailey and ten of his co-

defendants with the use, possession, and discharge of firearms during and in relation to that conspiracy, in violation of 18 U.S.C. §§ 924(c) and 2.  On January 27, 2014, Bailey pled guilty pursuant to a plea agreement to a lesser included offense of Count One and Count Two.[1]

Bailey's conviction arose from his involvement with the Strip Boyz, a Yonkers Street Gang.  As part of the gang, Bailey helped deal large amounts of crack cocaine.  Doc. 353, Gov't Sentencing Letter, at 1.  Bailey also maintained firearms, which he and other Strip Boyz members would use to protect their territory from encroachment from rival gangs.  *Id.* at 1-2.  Before Bailey's 2014 sentencing in this case, he had several prior criminal convictions.  In January 2009, he shot at a vehicle driven by a member of the Elm Street Wolves, a rival gang and received a sentence of six months incarceration.  *Id.* at 2.  Several months after the completion of this sentence, in December 2010, he brandished a gun at a member of a rival gang.  *Id.* at 3.   In addition to these and drug-related convictions, Bailey was also convicted of harassment in 2011, stemming from an incident of domestic violence.  Doc. 531, Gov't Opposition, at 2.[2]

At his sentencing in December 2014, the Court found that the mandatory minimum sentence of 180 months incarceration was appropriate.  Doc. 529, Sentencing Tr., at 10.  The Court stated that it is "really rather shocking . . . that more people have not been hurt" as the result of the violent activities of the Strip Boyz, and that Bailey "did not hurt individuals more seriously than [he had]."  *Id.*  It went on that the gang's activities "absolutely devastated

---

[1] Bailey's plea agreement included a waiver of his right to seek a modification of his sentence pursuant to 18 U.S.C. § 3582(c).  However, the Government is not seeking enforcement of that provision.

[2] There is some inconsistency between the Government's sentencing letter, which indicates that this conviction occurred in 2010, and its Opposition submission, which indicates that it occurred in 2011.  *Compare* Doc. 353 at 3 *with* Doc. 531 at 2.  In any event, it occurred several years before his sentencing in the instant case.

2

certain parts of your communities." *Id.* However, the Court also observed that Bailey had participated in various programs and courses while in pretrial detention, and expressed optimism that he would "continue to do what [he] need[s] to do in order to turn [his] life around." *Id.*

**B. The Instant Application**

On June 1, 2020, Bailey ▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Doc. 527 at 2. While he was ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Bailey submitted this application for compassionate release on December 24, 2020, seeking release on the basis of ▮▮▮▮▮▮▮▮▮▮. Doc. 527 at 2.[3] On December 31, 2020 Bailey reported symptoms such as ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Doc. 531 at 5. In its January 7, 2021 submission, the Government stated that FCI Danbury aims to have him evaluated again by a ▮▮▮▮ "in the next two months." *Id.*

Bailey submits evidence showing that some people who have ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The evidence suggests that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



---

[3] Bailey first applied to FCI Danbury's warden on August 25, 2020 and his request was denied on September 25, 2020. Doc. 527 at 2. The parties agree that Bailey has properly exhausted his administrative remedies and thus that this motion is ripe for consideration. *See* Doc. 531 at 3.

███████████████████████████████████████████████████████████

Bailey further argues that FCI Danbury has shown deliberate indifference to his health and safety because ████████████████████████████████████ ████████  He also cites evidence from other litigation against FCI Danbury, showing delays that some inmates have faced in obtaining medical appointments in connection to serious medical conditions.  *See* Doc. 534-1.

## II.      LEGAL STANDARD

### A.      18 U.S.C. § 3582

Although a court may not normally "modify a term of imprisonment once it has been imposed," there are certain limited exceptions, including "compassionate release."  *See United States v. Roberts*, No. 18 Crim. 528 (JMF), 2020 WL 1700032, at *1 (S.D.N.Y. Apr. 8, 2020) (internal quotation marks and citation omitted).  Under 18 U.S.C. § 3582, a court may reduce a prisoner's sentence when it finds that there are "extraordinary and compelling reasons" that warrant such a reduction, but one of two conditions must first occur:  either the BOP Director may move the court to release the prisoner; or, alternatively, the prisoner himself may move the court, but only after he has fully exhausted all administrative rights."  *See* 18 U.S.C. § 3582(c)(1)(A).

Prior to the First Step Act, sole authority rested in the BOP's Policy Statement to determine what reasons, for purposes of compassionate release, are "extraordinary and compelling."  *See* U.S.S.G. § 1B1.13 ("BOP Policy Statement"), Application Note 1.  However, the Second Circuit in *United States v. Booker* recently determined that "the First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions or compassionate release."  *See* 976 F.3d

226, 237 (2d Cir. 2020). Thus, the Court may consider the BOP Policy Statement, but it is not bound by it.

The BOP Policy Statement includes as an "extraordinary and compelling reason" the existence of "a serious physical or medical condition…that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. 1(A)(ii). It also permits the Court to consider whether the incarcerated person "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.* at § 1B1.13(2).

If the sentencing court finds that "extraordinary and compelling reasons" exist, it "may reduce a term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)," after considering the factors set forth in section 3553(a) to the extent that they are applicable. 18 U.S.C. § 3582(c)(1)(A).

### III. DISCUSSION

#### A. Extraordinary and Compelling Circumstances

Bailey's core argument is that his failure to secure a follow up appointment for ▮ ▮ since August poses a threat to his life. *See* Doc. 534, Bailey Sur-Reply, at 1. He bases this on the fact that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 2. He also argues that the Government's representation that Bailey will receive a follow up appointment in the first two months of 2021 evaluation is unreliable, given the wait times for treatment faced by other inmates at FCI Danbury. *Id.* at 3 (citing delays regarding medical care in Danbury, including an

5

individual waiting over a year for an oncology consultation).

▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅

▅▅▅▅▅ Courts in this Circuit deciding compassionate release motions by individuals with ▅▅▅▅▅ have generally found that such conditions must "substantially diminish[] one's ability to provide self-care within the environment of a correctional facility" to rise to the level of an "extraordinary and compelling" circumstance. *See, e.g.*, *United States v. Gotti*, 433 F. Supp. 3d 613, 619 (S.D.N.Y. 2020); *United States v. Rivernider*, No. 10 Crim. 222 (RNC), 2020 WL 597393, at *5 (D. Conn. Feb. 7, 2020). While Bailey has shown that his condition and symptoms should be monitored, he has not shown such diminishment.

The District of Connecticut's decision in *United States v. Rodriguez* is instructive here, as it dealt with another individual in his thirties with ▅▅▅▅▅ who is incarcerated in FCI Danbury. *See* No. 18 Crim. 162 (MPS), 2020 WL 5810416 (D. Conn. Sept. 30, 2020). The court in *Rodriguez* found that the defendant, whose ▅▅▅▅▅ caused him occasional ▅▅▅▅▅ had not established that he suffered from a medical condition rising to the level of a ▅▅▅▅▅ so as to merit compassionate release. *Id.* at 3.[5] It did so despite the

---

[5] While the *Rodriguez* Court was primarily concerned with Mr. Rodriguez's ▅▅▅▅▅ diagnosis as it related to his

6

fact that notes from Mr. Rodriguez's appointments—similar to those of Mr. Bailey here—indicated that FCI Danbury should monitor his condition. *Id.*

In this case, while Mr. Bailey's December 2020 report of ▇▇▇▇▇▇▇ likely merits a follow-up appointment, Bailey has not shown that FCI Danbury's anticipated timeframe for a follow up evaluation in the first two months of 2021 is unreasonable. Indeed, this estimated appointment time is consistent with notations in Bailey's medical records from an August 2020 appointment, which indicate that he had a ▇▇▇▇ for a follow up evaluation on February 3, 2021. Doc. 527-2 at 8.[6]

Bailey suggests that additional prolonged delays are inevitable, submitting evidence regarding others at FCI Danbury who have faced such delays in receiving follow up appointments for serious medical conditions. *See* Doc 534-1 at 35–36. However, these examples—while certainly concerning—deal with different types of specialists, for individuals with different medical needs than Bailey has, making it difficult to draw conclusions about the likelihood of unreasonable delay regarding his ▇▇▇▇▇ examination specifically. The same reasoning applies to Bailey's argument that FCI Danbury has shown deliberate indifference by failing to release inmates with certain COVID-19 risk factors to home confinement. *See* Doc. 527 at 4 (citing *Martinez-Brooks v. Easter*, 459 F. Supp. 3d 411, 440 (D. Conn. 2020)) (granting a temporary restraining order based on inmates' likelihood of success on their deliberate indifference claim). Bailey acknowledges that he falls outside of the settlement class

---

risk of additional complications with COVID-19, its analysis is still relevant here. Indeed, had the court believed that the condition on its own was sufficiently severe, it could have granted Mr. Rodriguez's motion on that basis alone, without consideration of its risk in conjunction with COVID-19.

[6] While Bailey argues that he made inquiries in fall 2020 about scheduling a follow-up ▇▇▇▇ appointment, there is no reason, in the absence of disclosure of new symptoms or risk factors, that these inquires would have altered his doctor's judgment in August 2020 that a follow up appointment in early 2021 was sufficient.

7

of inmates at issue in the *Martinez-Brooks* case, and that his application is not based on COVID-19 susceptibility. He also has not established that FCI Danbury's alleged failure to use its home confinement authority, as discussed in *Martinez-Brooks*, will predict future delays in securing appointments with specialists such as ▓▓▓▓▓.[7]

### B. Risk to the Community

Because Bailey has not established that extraordinary and compelling circumstances exist to merit compassionate release, the Court reserves decision on whether his release would constitute a risk to public safety.

### IV. CONCLUSION

For the reasons discussed above, Bailey's motion for compassionate release is DENIED without prejudice. The clerk of court is respectfully directed to terminate the motion, Doc. 527. It is SO ORDERED.

Dated: February 1, 2021
       New York, New York

EDGARDO RAMOS, U.S.D.J.

---

[7] The Court notes that the presiding judge in the *Martinez-Brooks* litigation, the Honorable Michael P. Shea, also decided *United States v. Rodriguez*, and thus was surely aware of the conditions inside FCI Danbury in determining that Rodriguez's ▓▓▓▓▓ did not constitute extraordinary and compelling circumstances.